**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Cody James Martinez,

              Petitioner,

v.

David Shinn, et al.,

              Respondents.

No. CV-21-00163-TUC-RM

**AMENDED ORDER**

      Pending before the Court is a Report and Recommendation ("R&R") by Magistrate Judge Lynette C. Kimmins (Doc. 31), recommending that this Court dismiss Petitioner Cody James Martinez's Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus ("Amended Petition") (Doc. 18).  Petitioner filed an Objection (Doc. 34), to which Respondent filed a Response (Docs. 40).  For the following reasons, the Court will overrule Petitioner's Objection, accept and adopt the R&R, and deny the Amended Petition.

## I.   Background

      Following a jury trial in Pima County Superior Court, Petitioner was convicted of kidnapping and first-degree murder under both premeditated and felony murder theories. (Doc. 25-1 at 19, 26.)[1]  During the aggravation phase of the trial, the jury determined that the murder was carried out for financial gain ("F(5) aggravator"), *see* A.R.S. § 13-703(F)(5) (2003),[2] and that it was especially cruel, as well as heinous or depraved ("F(6)

---

[1] All record citations refer to the document and page numbers generated by the Court's electronic filing system.

[2] The Court refers herein the version of the statutory aggravating factors in effect at the

Aggravator"), *see* A.R.S. § 13-703(F)(6).  (Doc. 25-1 at 20, 37-39.)  During the penalty phase of trial, the jury determined that Petitioner should be sentenced to death for the murder.  (*Id.* at 49.)  On December 16, 2005, the court imposed an aggravated 20-year sentence for the kidnapping conviction, to be served consecutively to the murder sentence.  (*Id.* at 55.)

The Arizona Supreme Court affirmed Petitioner's convictions and sentences on direct appeal, *State v. Martinez*, 189 P.3d 348 (Ariz. 2008), and the United States Supreme Court denied certiorari (Doc. 25-4 at 190).  The Arizona Supreme Court set forth the following facts in support of Petitioner's convictions:[3]

> ¶ 1 On June 12, 2003, twenty-one-year-old Cody James Martinez, fifteen-year-old Michael Lopez, and several other adolescents were at a friend's Tucson home smoking marijuana.  Johnathon Summey-Montaño arrived with Francisco Aguilar.  Aguilar was sent out with two others to purchase rolling papers for the group.
>
> ¶ 2 Summey-Montaño described Aguilar to Martinez as a "baller" (meaning he had money) and suggested that they rob him.  Martinez agreed.  When Aguilar returned to the house, Martinez first engaged him in a conversation and then punched him in the face.  Martinez and Summey-Montaño began beating Aguilar, while other members of the group went outside.  Martinez and Summey-Montaño called Aguilar a child molester.  Martinez directed Lopez to join in kicking Aguilar, threatening to kill Lopez if he did not do so.  Summey-Montaño pointed a shotgun at Aguilar.  Martinez took the shotgun and hit Aguilar in the head with it.  Martinez and Summey-Montaño then bound Aguilar's hands and feet.  Aguilar was crying and begging for an explanation for the beating.  Martinez and Summey-Montaño took valuables from Aguilar: Summey-Montaño put on Aguilar's necklace and took two dollars from one of Aguilar's shoes; Martinez put Aguilar's gold bracelet in his own pocket.
>
> ¶ 3 Lopez and Summey-Montaño then forced Aguilar into the trunk of a car.  Martinez, Lopez, Summey-Montaño, and at least one other person got into the car.  Martinez drove and Summey-Montaño gave directions to Aguilar's home.  When they arrived, Martinez instructed one of the others to watch for

time of Petitioner's original sentencing.
[3] In his Objection to the R&R, Petitioner argues that the facts set forth in the Arizona Supreme Court's opinion are "based on the ineffective record at the 2005 sentencing," and that the "true facts" were developed during Petitioner's post-conviction and resentencing proceedings.  (Doc. 34 at 10-14.)  Although the Court recognizes that new facts relevant to intoxication, impulsivity, and motive were developed during Petitioner's post-conviction and resentencing proceedings, the new facts do not specifically rebut the particular facts quoted herein from the Arizona Supreme Court's opinion.  *See* 28 U.S.C. § 2254(e)(1) (in a § 2254 habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence").

Aguilar's family.  Martinez and Summey-Montaño entered the house and returned with beer and liquor.  Apparently dissatisfied with the haul, Martinez demanded that Aguilar tell him "where's the stuff; where's the shit?"—a reference to "drugs, money, or whatever."  Martinez returned to the house and came back with a computer printer.

¶ 4 When they tried to leave, Martinez could not start the car.  The group pushed the car, with Aguilar still in the trunk, to a nearby gas station.  They put gas in the car but it still did not start.  The group pushed it to a nearby pay telephone and sat there.  Aguilar remained in the trunk.

¶ 5 Later, an acquaintance arrived at the gas station.  Martinez spoke to this person and showed him a bag of methamphetamine.  The acquaintance used Aguilar's mobile telephone to call Fernando Bedoy, who arrived in a Ford Explorer.  Using the Explorer, Martinez and the others pushed their vehicle to a side street.  The car still would not start.

¶ 6 Summey-Montaño and Martinez then led Aguilar from the trunk of the car to the cargo space of the Explorer, keeping him covered with a blanket.  Martinez poked Aguilar with a shotgun when Aguilar did not crawl into the Explorer fast enough.

¶ 7 Martinez, Bedoy, Lopez, and Summey-Montaño got into the Explorer, leaving the rest of the group behind.  Bedoy drove.  After some discussion between Summey-Montaño and Martinez, Martinez directed Bedoy to the desert.  Martinez announced he intended to kill Aguilar and anyone who tried to stop him.

¶ 8 As Bedoy drove, Martinez and the others were laughing and taunting Aguilar.  Summey-Montaño stabbed Aguilar in the hand with a knife and hit him with a compact disc he claimed to have stolen from Aguilar.  He also mocked Aguilar, asking him to name his favorite track on the disc.

¶ 9 When the group arrived at the desert area, Summey-Montaño pulled Aguilar out of the Explorer.  Martinez and Summey-Montaño kicked Aguilar.  Aguilar was dragged around the truck, making "noises of pain ... moaning and groaning."  Martinez, Summey-Montaño, and Lopez continued kicking and stomping on Aguilar, while Aguilar begged for his life.  Martinez demanded he shut up and ordered Aguilar to march into the desert at gunpoint and then to lie down.

¶ 10 Martinez fired a shot at Aguilar that went "[r]ight above his head," although Martinez stood directly above the victim.  Martinez laughed about having missed.  As Martinez reloaded the shotgun, Summey-Montaño beat Aguilar with a tire iron and stabbed him in the belly.  Martinez fired again, this time hitting Aguilar in the collarbone area, "[a] little lower than the neck," but not killing him.  Summey-Montaño refused Martinez's request that he finish off Aguilar, so Martinez fired one more time, hitting Aguilar in the neck, killing him.

¶ 11 Martinez and Summey-Montaño ordered Lopez and Bedoy to wipe out the footprints they had left.  Trash was piled on Aguilar's body and Martinez lit the pile on fire.  The group returned to the Explorer and drove away.

¶ 12 Moments later, a Tucson Airport Authority police officer on patrol

- 3 -

noticed smoke in the distance and the Explorer driving from that direction and initiated a traffic stop.  As the police cruiser and the Explorer crossed paths, Martinez hid cocaine and methamphetamine in the vehicle in which he was travelling.  He told the group to tell police they were coming from a barbeque at "Cisco's."  He told the officer who stopped the Explorer the same.  Police detained the group.  Tucson firefighters, meanwhile, responded to the blaze and reported that a body had been found.  After the body was discovered, Martinez was taken into custody and, incident to that arrest, was searched.  Jewelry and marijuana were found in Martinez's possession. Liquor, drugs, and the shotgun were also found in the Explorer.

*Martinez*, 189 P.3d at 351-53.

Petitioner initiated post-conviction relief ("PCR") proceedings.  (Doc. 25-4 at 192; Doc. 25-5; Doc. 25-6 at 3-43.)  After an evidentiary hearing on penalty-phase claims, the PCR court found that counsel was ineffective during the penalty phase and vacated the death sentence.  (Doc. 25-9 at 73-74; Doc. 26-3 at 36-42.)  The court discussed evidence indicating that trial counsel failed to explore the effect that intoxication may have had on Martinez's behavior; failed to present mitigation evidence; failed to develop a meaningful relationship with Martinez; rewrote Martinez's letter of allocution without permission; failed to rebut the prosecutor's comment about a "Cisco barbeque" alibi; failed to present evidence that a necklace belonged to Martinez and had not been stolen from the victim; failed to fully present evidence of provocation in the form of alleged sexual misconduct by the victim; and "did not adequately rebut the argument that the homicide was motivated by anything other than robbery."  (*Id.* at 37-41.)  The court determined that trial counsel's "performance, particularly in the penalty phase of the trial, fell below an objectively reasonable standard," and that if not for trial counsel's errors, there was a reasonable probability that the jury would not have imposed the death penalty.  (*Id.*)  The court found that the remaining issues raised in the petition were precluded.  (*See id.* at 36.)

Petitioner sought the Arizona Supreme Court's review of the denial of his non-penalty-phase claims.  (Doc. 26-3 at 44-120.)  The Arizona Supreme Court vacated the PCR court's preclusion ruling and remanded Petitioner's guilt and aggravation-phase claims to be considered on the merits.  (*Id.* at 419.)  After supplemental briefing, the PCR court denied relief without holding another evidentiary hearing.  (Doc. 26-4 at 119-124.)

- 4 -

1    The court noted that it was "very familiar with the facts" of the case after presiding over

2    trial, the aggravation and penalty phases, and the post-conviction evidentiary hearing that

3    led to Petitioner's resentencing. (*Id.* at 119.) The court acknowledged its prior finding that

4    trial counsel was ineffective for purposes of the penalty phase of the capital trial. (*Id.*)

5    However, the court determined that the expanded post-conviction record did not warrant

6    any further relief. (*Id.* at 119-124.) The Arizona Supreme Court denied review, and the

7    United States Supreme Court again denied certiorari. (Doc. 26-5 at 3, 60.)

8          The State later withdrew its intent to seek the death penalty. (*Id.* at 62.) On

9    December 17, 2021, Petitioner was resentenced to a term of 25 years to life for the first-

10    degree murder charge; the court affirmed the consecutive 25-year sentence on the

11    kidnapping charge. (*Id.* at 64-66.) Petitioner's motion to modify the kidnapping sentence

12    to run concurrently with his life sentence was denied. (*Id.* at 68-76, 84; Doc. 40 at 4.)

13    Petitioner appealed his resentencing on state-law grounds. (*See* Doc. 14 at 2.) The Arizona

14    Court of Appeals affirmed, the Arizona Supreme Court denied review, and the mandate

15    issued in November 2023. (*See* Doc. 40 at 4.)

16          Martinez filed his original federal habeas petition on April 13, 2021, while his

17    resentencing proceedings were still pending. (Doc. 1.) On June 14, 2022, following his

18    resentencing, Petitioner filed an Amended Petition raising 24 claims. (Doc. 18.) On June

19    26, 2024, Magistrate Judge Kimmins issued the pending R&R, recommending denial of

20    the Amended Petition. (Doc. 31.) As an initial matter, the R&R finds that the Amended

21    Petition should not be dismissed as premature. (*Id.* at 5.) The R&R then finds that Claim

22    19 of the Amended Petition, and the portions of Claims 16, 18, and 24 asserting ineffective

23    assistance of counsel ("IAC"), are procedurally defaulted. (*Id.* at 28-30, 45, 47, 49.) The

24    R&R finds that Claims 1-4, 6, 9-11, 13, 15, 17, 19, and 20 fail on the merits. (*Id.* at 9-30.)

25    The R&R finds that Claims 5, 7, 8, 12, 14, 16, 18, and 21-24—which arise from the

26    aggravation and penalty phases of Petitioner's capital trial—became moot when

27    Petitioner's death sentence was vacated. (*Id.* at 30-31.) The R&R reasons that the jury

28    was tasked during the aggravation and penalty phases only with determining whether

1   Petitioner was eligible for and should receive the death penalty, and that the jury's findings
2   on aggravating factors do not relate to his kidnapping conviction. (*Id.*) The R&R also
3   finds that the claims are procedurally defaulted because Petitioner failed to fairly present
4   them in state court with respect to his kidnapping sentence as opposed to his murder
5   sentence. (*Id.* at 32.) The R&R also addresses the substance of Claims 5, 7, 8, 12, 14, 16,
6   18, and 21-24, and finds that each claim fails on the merits. (*Id.* at 32-50.)

7       Petitioner filed an Objection to the R&R (Doc. 34), and Respondents filed a
8   Response (Doc. 40).

9   **II.    Standards of Review**

10      **A. District Court Review of Report and Recommendation**

11      A district judge must "make a de novo determination of those portions" of a
12  magistrate judge's "report or specified proposed findings or recommendations to which
13  objection is made." 28 U.S.C. § 636(b)(1). Objections to an R&R "must identify specific
14  flaws in the R&R's reasoning, not simply repeat . . . earlier arguments." *Scott v. Shinn*,
15  No. CV-20-02343-PHX-DWL, 2021 WL 5833270, at *4 (D. Ariz. Dec. 9, 2021). The
16  advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure suggest
17  that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no
18  clear error on the face of the record in order to accept the recommendation" of a magistrate
19  judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition; *see also Johnson
20  v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial
21  objection is made, the district court judge reviews those unobjected portions for clear
22  error."); *Prior v. Ryan*, No. CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr.
23  18, 2012) (reviewing for clear error unobjected-to portions of Report and
24  Recommendation). However, district courts are not *required* to review any portion of an
25  R&R to which no specific objection has been made. *See Thomas v. Arn*, 474 U.S. 140, 150
26  (1985) ("It does not appear that Congress intended to require district court review of a
27  magistrate's factual or legal conclusions, under a de novo or any other standard, when

28

neither party objects to those findings.").[4]

## B. Antiterrorism and Effective Death Penalty Act of 1996

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to a petition for writ of habeas corpus filed after April 24, 1996, by a state prisoner. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001). AEDPA provides that habeas relief will not be granted "with respect to any claim that was adjudicated on the merits" in state court unless the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA requires that petitioners exhaust available state remedies by fairly presenting the factual and legal basis of their claims to the highest court of the state before raising the claims in federal habeas proceedings. 28 U.S.C. § 2254(b)(1)(A); *Cooper v. Neven*, 641 F.3d 322, 326-27 (9th Cir. 2011). A claim is considered procedurally defaulted if the state court rejected it based on an independent and adequate state procedural rule, *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003), or if the petitioner failed to raise it in state court and would now be procedurally barred from doing so, *Cooper*, 641 F.3d at

---

[4] Because some Ninth Circuit authority indicates that a district court must review determinations of law de novo even absent objection, *see, e.g., Robbins v. Carey*, 481 F.3d 1143, 1147 (9th Cir. 2007), this Court has conducted de novo review of the determinations of law in Magistrate Judge Kimmins's R&R.

327.  A federal habeas court may not review a procedurally defaulted claim unless the petitioner demonstrates cause for the default and actual prejudice, or a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**III.    Discussion**

Respondent has not objected to the R&R's finding that the Amended Petition should not be dismissed as premature.  The R&R's finding on the timeliness of the Amended Petition is not clearly erroneous, and the Court accepts and adopts it.

Petitioner has not objected to the R&R's findings that the IAC portions of Claims 16, 18, and 24 are procedurally defaulted.  (*See* Doc. 34.)  The R&R's procedural default findings with respect to these claims are not clearly erroneous, and the Court accepts and adopts them.

**A.    Petitioner's Objections to R&R's Application of AEDPA Deference**

Petitioner argues that the state court applied erroneous standards in deciding his IAC claims and that the R&R therefore erred in deferring to the state court's rulings on those claims.  (Doc. 34 at 14-15, 34-37.)[5]

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant asserting a claim of ineffective assistance of counsel must show both deficient performance and prejudice.  To establish deficient performance, the defendant "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  When a federal habeas court reviews a state court's application of *Strickland*, the federal court's review is "doubly deferential" because *Strickland* requires deferential review of defense counsel's effectiveness and "AEDPA requires federal courts to defer to the state court's decision unless the state court's application of Supreme Court precedent was objectively unreasonable."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th

---

[5] Petitioner raises his argument about the state court's application of the *Strickland* standard in the Standard of Review section of his Objection and in Claim 11.  (*Id.*; *see also* Doc. 18 at 139-144.)  The Court discusses Claim 11 in Section III(L), *infra*.

- 8 -

Cir. 2010).

The R&R correctly recites the legal standards applicable to Petitioner's IAC claims. (Doc. 31 at 8-9.)   The PCR court also accurately recited the *Strickland* standard, and although some of the language used by the PCR court was imprecise, when read in context, the PCR court's rulings reflect the correct application of *Strickland*'s prejudice standard. (*See* Doc. 26-4 at 119-124.)   Accordingly, the R&R did not err in applying AEDPA deference to the PCR court's rulings.   The PCR court's specific rulings on Petitioner's claims are addressed below.

**B.    Mootness and Procedural Default of Aggravation and Penalty Phase Claims**

Petitioner objects to the R&R's conclusions that his aggravation and penalty phase claims are moot and procedurally defaulted, arguing that his petition for post-conviction relief did not limit the claims to the death penalty sentence, that the evidence presented during the guilt and aggravation phases of trial affected his kidnapping sentence, and that the trial judge explicitly relied upon the aggravating factors found by the jury in imposing the kidnapping sentence.   (Doc. 34 at 8-10.)   As the R&R recognizes, the aggravation and penalty phases of Petitioner's trial related to Petitioner's death sentence, which was vacated during Petitioner's post-conviction relief proceedings.   (Doc. 31 at 30-31.)   Because the jury's findings on the aggravating factors "are tangential to [Petitioner's] kidnapping sentence," Petitioner's state-law claims challenging the aggravating factors cannot easily be converted to challenges to the kidnapping sentence.   (*Id.* at 31.)   But even if Petitioner is correct that his aggravation and penalty phase claims are not moot because the record developed during those phases affected Petitioner's kidnapping sentence, and even if Petitioner is correct that his petition for post-conviction relief fairly presented the aggravation and penalty phase claims with respect to the kidnapping sentence, the R&R finds that the aggravation and penalty phase claims fail on the merits.   (*See id.* at 32-50.) Accordingly, the Court proceeds to a merits analysis of all of Petitioner's claims.[6]

---

[6] The Court addresses Petitioner's claims in numerical order, except where related claims

- 9 -

### C.  Claim 1: IAC—Minimal Pretrial Meetings with Counsel

In Claim 1, Petitioner argues that his trial counsel was ineffective because he met with Petitioner for only one hour and eight minutes over the two and a half years leading up to trial.  (Doc. 18 at 21-35.)  The PCR court acknowledged that Petitioner's allegations of deficient performance were "not entirely baseless" and that "[o]ne hour and eight minutes is an unusually little amount of time to meet with a client on a first-degree murder case where the possibility of the death penalty is attached."  (Doc. 26-4 at 120.)  However, the PCR court found that Petitioner failed to demonstrate prejudice because he could "only speculate that the outcome would have been different if trial counsel spent more time with him."  (*Id.*)  The R&R determines that the denial of this claim was not objectively unreasonable because the claim serves only as background information and does not allege actual prejudice.  (Doc. 31 at 10.)  Petitioner's Objection does not dispute this conclusion but merely explains that Claim 1 is the necessary "starting point" and "root of every other issue."  (Doc. 34 at 15.)

Trial counsel's extremely limited contact with Petitioner is troubling.  However, Petitioner has not asserted Claim 1 as an independent ground for habeas relief but, rather, as foundational background for subsequently asserted IAC claims.  (*See* Doc. 18 at 25-26.) As the R&R states, "Petitioner acknowledge[s] that Claim 1 is an argument that trial counsel 'failed to prepare' and the remaining claims of the Amended Petition detail and document the ways in which counsel was unprepared."  (Doc. 31 at 10 (citing Doc. 29 at 13-14, 17).)  The Court adopts the R&R's findings and recommendation regarding Claim 1 but will consider the contextual information in Claim 1 when evaluating Petitioner's subsequent claims.

### D.  Claim 2: IAC—Counsel's Conduct in Unrelated Cases

In Claim 2, Petitioner argues that the ineffective performance of trial counsel in other cases, along with his conduct in this case, undermines the presumption of effective assistance.  (Doc. 18 at 35-44.)  The PCR court excluded evidence of trial counsel's

are grouped together due to overlapping legal or factual issues.

performance in other cases during an evidentiary hearing on ineffective assistance of counsel, finding that the evidence was "irrelevant under any theory of admissibility" and that the probative value of the evidence did "not outweigh the nature of unfair prejudice." (Doc. 26-3 at 12.)  The R&R concludes that Claim 2 is not an independent constitutional claim because Petitioner does not identify any prejudice.  (Doc. 31 at 10-11.)

In his Objection, Petitioner asserts that the prejudice is Petitioner's unjust trial proceedings and that counsel's history "colors any understanding" of the remaining claims. (Doc. 34 at 15-16.)  However, Petitioner does not explain how counsel's behavior in other cases impacted the outcome of Petitioner's own criminal proceeding.  *See Strickland*, 466 U.S. at 694.  As does Claim 1, this Claim appears to serve as background information and support for other claims, rather than as a standalone claim.  Therefore, the Court adopts the R&R's findings and recommendation regarding Claim 2.

### E.  Claim 3: IAC—*State v. Renteria*

In Claim 3, Petitioner argues that the verdict in *State v. Renteria*[7] illustrates the prejudice resulting from trial counsel's failure to present a provocation defense based on the victim's alleged molestation of a child.  (Doc. 18 at 44–45.)  The PCR court rejected this argument, finding that *Renteria* was neither controlling nor factually analogous, and that relying on the outcome of "an entirely different trial case" was "too speculative" to establish prejudice.  (Doc. 26-4 at 121.)  The R&R concludes that Claim 3 is not an independent IAC claim because Petitioner did not identify any specific deficiency in trial

---

[7] Petitioner describes *State v. Renteria* (Pima County CV 2010–0889) as involving a defendant who killed two individuals six days after discovering that one had sexually abused his son. (Doc. 18 at 45.)  According to Petitioner, after two mistrials, the defendant was ultimately acquitted of murdering the abuser and convicted only of negligent homicide for the killing of the abuser's friend. (*Id.*)  The Arizona Court of Appeals, on appeal of the convictions and sentences in *Renteria*, described the case slightly differently.  *See State v. Renteria*, No. 2 CA-CR 2011-0342, 2013 WL 3518201 (Ariz. App. July 11, 2013). According to the Court of Appeals' description, Renteria believed one of the victims had molested his son and the other had threatened to kill him and his son if they notified the police.  *Id.* at *1.  Renteria drove to a residence, intending to tell the victims to stay away from his family, but he shot and killed them after they approached his vehicle in a menacing manner.  *Id.*  He was charged with two counts of manslaughter.  *Id.*  His first three trials resulted in mistrials.  *Id.*  In the fourth trial, he was acquitted of manslaughter with respect to the victim he believed had molested his son, and he was convicted of the lesser-included offense of negligent homicide with respect to the other victim.  *Id.*

counsel's performance.  (Doc. 31 at 11–12.)

In his Objection, Petitioner contends that *Renteria* "exemplifies the significance of a provocation defense."  (Doc. 34 at 17.)  However, he does not challenge the R&R's finding that Claim 3 is not a standalone IAC claim.  The argument set forth in Claim 3 is better understood as support for Claim 4 rather than a standalone basis for relief.  Accordingly, the Court adopts the R&R's findings and recommendation as to Claim 3.

**F.  Claim 4: IAC—Failure to Pursue Adequate Provocation and Impulsivity Evidence**

In Claim 4, Petitioner contends that trial counsel rendered ineffective assistance by failing to present a provocation defense to the premeditated murder charge and by failing to introduce evidence of Petitioner's impulsivity.  (Doc. 18 at 45–62.)  Specifically, he alleges that trial counsel overlooked Petitioner's belief that the victim had sexually assaulted co-defendant Summey-Montaño's eleven-year-old cousin shortly before the killing, and that this belief would have supported a manslaughter conviction under a provocation theory.  (*Id.* at 46, 57.)

The PCR court made three findings in rejecting Claim 4: (1) because the jury found Petitioner guilty under both premeditated and felony murder theories, and manslaughter is not a lesser-included offense of felony murder, any provocation defense would not have altered Petitioner's first-degree murder conviction; (2) the alleged provocation, based on unsubstantiated rumors, did not constitute adequate provocation; and (3) the claim of impaired impulse control failed in light of "overwhelming" evidence of planning and premeditation.  (Doc. 26-4 at 121-122.)  The R&R concludes that the PCR court reasonably rejected this claim.  (Doc. 31 at 12–15.)

In his Objection, Petitioner argues that substantial evidence supported a provocation defense and that Petitioner's first-degree murder conviction on the felony-murder theory is flawed.[8]  (Doc. 34 at 18-21.)  He also notes that the trial court cited counsel's failure to

---

[8] As explained below, Petitioner's challenges to the felony-murder conviction (Claims 6 and 20) fail.

1    present an adequate provocation defense as a factor in setting aside Petitioner's death

2    sentence. (*Id.* at 18.)

3          As the R&R notes, it is true that the PCR court overturned Petitioner's death

4    sentence, in part, because counsel failed to present evidence of the victim's alleged

5    molestation of a child as motivation for the murder. (Doc. 31 at 12-13 n.4; Doc. 26-3 at

6    32-33.) However, the PCR court's prejudice finding was limited to the impact the evidence

7    may have had on the jury's decision to impose a sentence of death. (Doc. 26-3 at 32-33.)

8    The PCR court's finding that there was a reasonable probability the jury would not have

9    imposed the death penalty but for trial counsel's alleged deficiencies is not inconsistent

10   with its later finding that there was no reasonable probability the outcome of the guilt phase

11   of Petitioner's trial would have been different but for those deficiencies. (*Compare* Doc.

12   26-3 at 29-33, *with* Doc. 26-4 at 121-122.)

13         Here, even if counsel performed deficiently by failing to investigate and present a

14   provocation defense and evidence of Petitioner's impulsivity, Petitioner cannot

15   demonstrate a reasonable probability that the jury would not have convicted him of first-

16   degree murder but for counsel's deficient performance. The jury convicted Petitioner of

17   first-degree murder on both premeditated and felony murder theories and, as the PCR court

18   found, a provocation theory could not have negated the elements of the felony-murder

19   charge. Furthermore, the PCR reasonably determined that there was no reasonable

20   probability the jury would have acquitted Petitioner on the premeditated murder theory but

21   for trial counsel's failure to present evidence of provocation and impulsivity, given the

22   "overwhelming" evidence of Petitioner's premeditation and reflection. (Doc. 26-4 at 122.)

23   The jury was instructed that "[a]n act is not done with premeditation if it is the instant effect

24   of a sudden quarrel or heat of passion." (Doc. 26-7 at 193.) The PCR court cited the

25   following evidence of premeditation and reflection:

26         Martinez confined the victim in a trunk of a vehicle, robbed his home, moved
           the victim to another vehicle, and announced his intention to kill the victim
27         during the process. Next, Martinez beat, dragged, and stomped on the victim
           prior to firing a shotgun shot into the ground near his head. Martinez then
28         reloaded the shotgun, unsuccessfully tried to convince an accomplice to kill

the victim, and then shot the victim himself a final time ending his life.

(Doc. 26-4 at 122.)

The PCR court did not unreasonably apply *Strickland* in rejecting Claim 4 based on an inability to establish prejudice. The Court adopts the R&R's findings and denies habeas relief on Claim 4.

### G. Claims 5, 8, and 21

The R&R addresses Claims 5, 8, and 21 together because each involve the F(5) pecuniary gain aggravating factor. This Court will do the same.

#### 1.    Claim 21: Sufficiency of the Evidence—Pecuniary Gain Aggravator F(5)

In Claim 21, Petitioner alleges there was insufficient evidence to support the F(5) pecuniary gain aggravating factor. (Doc. 18 at 183-185.) He argues the aggravator cannot be established because financial gain was not the "but for" cause of the murder; rather, Petitioner contends he killed the victim for molesting Summey-Montaño's minor cousin. (*Id.* at 184-185.)

The Arizona Supreme Court rejected this claim, finding substantial evidence to support the F(5) aggravator. *Martinez*, 189 P.3d at 362. The R&R determines that the Arizona Supreme Court's denial of this claim was not objectively unreasonable because "a rational factfinder could determine that Petitioner was motivated to murder the victim with the expectation that he would be able to keep the stolen items and evade prosecution for the crimes." (Doc. 31 at 34.) The R&R applies a double-deference standard under AEDPA in evaluating this claim. (*Id.* at 33.)

In his Objection, Petitioner contends that if the jury had heard evidence of the victim's alleged molestation of a child or had not been misled by the misidentification of a necklace, the pecuniary gain finding could have failed. (Doc. 34 at 48.) He further asserts that the remaining evidence of pecuniary gain was incidental to the murder and insufficient to support the aggravator. (*Id.*) Petitioner also argues that the R&R improperly applies a double-deference standard. (*Id.* at 49.)

1        As the state court explained, the F(5) pecuniary gain aggravator applies where a

2   crime was committed "as consideration for the receipt, or in expectation of the receipt, of

3   anything of pecuniary value." *Martinez*, 189 P.3d at 362.  The aggravator "need only be *a*

4   motive for the murder, not the sole motive." *Id.*  "The notion of a 'but for' relationship

5   merely means that the state must establish the connection between the murder and motive

6   through direct or strong circumstantial evidence." *Id.* (internal quotations and alterations

7   omitted); *see also State v. Kayer*, 984 P.2d 31, 41–42 (Ariz. 1999) ("A financial motive

8   need not be the only reason the murder was committed for the pecuniary gain aggravator

9   to apply.").

10        Here, Petitioner does not challenge the Arizona Supreme Court's factual

11   determination—which is supported by the record (*see, e.g.*, Doc. 26-6 at 142, 144) —that

12   he and his co-defendants agreed to rob the victim.  Nor does Petitioner cite any authority

13   imposing a threshold value requirement for pecuniary gain.  The record supports that the

14   group acted with the expectation of pecuniary gain when "Martinez and his accomplices,

15   after placing the victim in a trunk of a vehicle, ransacked the victim's home a first time,

16   returned to interrogate the victim as to where the 'stuff' and 'shit' was and, then, proceeded

17   to (re)enter his home and steal items of value."  (Doc. 26-4 at 124.)  Petitioner

18   acknowledges that the group stole items of pecuniary value, including a printer, alcohol,

19   and a small amount of cash.  (Doc. 34 at 48.)

20        Under clearly established federal law, evidence is sufficient to support a conviction

21   when, "after viewing the evidence in the light most favorable to the prosecution, any

22   rational trier of fact could have found the essential elements of the crime beyond a

23   reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In habeas proceedings,

24   this standard is layered with AEDPA deference, such that a federal court may grant relief

25   only if the state court's decision was also "objectively unreasonable." *Parker v. Matthews*,

26   567 U.S. 37, 43 (2012) (emphasizing that this "twice-deferential standard" applies to

27   sufficiency-of-the-evidence claims).  Petitioner's objection to the R&R's application of

28   this doubly deferential standard is unavailing, particularly given that his own Amended

Petition acknowledges the double-deference framework. (Doc. 18 at 183 (acknowledging that "[t]he standard of review for a sufficiency of the evidence challenge on federal habeas corpus is an AEDPA double-deference standard.").) The Arizona Supreme Court's determination that sufficient evidence supported the F(5) aggravator—based on testimony that Petitioner and his accomplices agreed to rob the victim, stole items during the crime, and acted with the expectation of pecuniary gain—was not objectively unreasonable. The Court therefore accepts the R&R's recommendation as to Claim 21.

### 2.      Claims 5 and 8: IAC—Failure to Rebut F(5) Pecuniary Gain Aggravator and to Present Evidence of Necklace Ownership

In Claims 5 and 8, Petitioner alleges that trial counsel was deficient in failing to rebut the F(5) pecuniary gain aggravating factor. (Doc. 18 at 63-78, 118-128.) Specifically, Petitioner argues that trial counsel was ineffective for failing to adequately rebut the State's assertion that the kidnapping was committed for pecuniary gain (Claim 5) and for failing to present evidence that a necklace alleged to have been stolen during the robbery actually belonged to Petitioner (Claim 8). (*Id.*) Petitioner contends that the pecuniary gain aggravator was rebuttable with evidence that the killing was motivated by the victim's act of child molestation. (*Id.* at 65.)

The PCR court rejected both claims, finding that trial counsel was not deficient in his defense of the pecuniary gain aggravating factor, and that Petitioner did not suffer prejudice "in light of the overwhelming evidence underpinning the robbery motive." (Doc. 26-4 at 121, 123-124.) The R&R concludes that the PCR court's rejection of Claims 5 and 8 was not objectively unreasonable because Petitioner failed to establish prejudice under *Strickland*. (Doc. 31 at 34–35.) First, the R&R finds that the pecuniary gain aggravator was strongly supported by substantial evidence, including evidence independent of the misidentified necklace. (*Id.* at 36.) Next, the R&R notes that Petitioner was eligible for the maximum aggravated term of 21 years for the kidnapping conviction based on a single aggravating factor. (*Id.*) In total, the judge identified five aggravating factors and only two mitigating ones. (*Id.* (citing Doc. 26-8 at 83-84).) Accordingly, the R&R concludes

that even if trial counsel had rebutted the pecuniary gain factor, Petitioner has not shown a reasonable probability that the sentencing court would have imposed a lesser sentence for the kidnapping conviction. (*Id.*)

In his Objection, Petitioner argues that the PCR court found counsel ineffective for failing to rebut the pecuniary gain aggravating factor with provocation evidence, and that because the trial court considered the pecuniary gain aggravating factor in enhancing Petitioner's kidnapping sentence, there is a reasonable probability that Petitioner's sentence on the kidnapping conviction would have been lower but for trial counsel's errors. (Doc. 34 at 23.)

The setting aside of Petitioner's death sentence does not demonstrate a reasonable probability of a different result as to his aggravated kidnapping sentence. Even if trial counsel rendered deficient performance in failing to adequately present a provocation defense and failing to adequately challenge the necklace's ownership, Petitioner has failed to show a reasonable probability that his kidnapping sentence would have been different, given the substantial evidence supporting the pecuniary gain aggravator and the other aggravating factors found by the sentencing court. As the PCR court noted, the trial record contained "copious evidence of a robbery," including actions that preceded, accompanied, and followed the killing. (Doc. 26-4 at 121.) Furthermore, the sentencing court identified four additional aggravating factors, independent of pecuniary gain, that supported an aggravated sentence on the kidnapping conviction. (Doc. 26-8 at 84.) The PCR court's denial of Claims 5 and 8 was not objectively unreasonable. The Court adopts the R&R's findings and recommendation with respect to Claims 5 and 8.

**H. Claims 6 and 20: Felony Murder**

Claims 6 and 20 challenge Petitioner's felony murder conviction and are therefore discussed together, as they are in the R&R. In Claim 6, Petitioner alleges that trial counsel was ineffective for failing to object to an outdated felony murder jury instruction. (Doc. 18 at 79-87.) In Claim 20, Petitioner asserts that there was insufficient evidence to support the felony murder conviction because the murder did not occur "in furtherance of" the

1   underlying kidnapping.  (*Id.* at 180-183.)

2        At trial, the jury was instructed:
3        With respect to the felony murder rule, insofar as it provides the basis for a
         charge of first degree murder, it is the law that there is no requirement that
4        the killing occur "while committing" or "engaged in" the felony, or that the
         killing be a part of the felony. The homicide need not have been committed
5        to perpetrate the felony.

6        It is enough if the felony and the killing were part of the same series of events.

7

8   (Doc. 26-7 at 194.)   On direct appeal, the Arizona Supreme Court found that "the

9   instruction does not accurately state the law," but that Martinez could not show prejudice

10  because the jury also convicted him on the alternate theory of premeditated murder, and he

11  did not challenge on appeal the jury's finding of premeditated murder. *Martinez*, 189 P.3d

12  at 354-55.   The PCR court concluded that Petitioner's IAC claim related to the felony

13  murder instruction failed because the jury had also found Petitioner guilty on the

14  premeditated murder theory.  (Doc. 26-4 at 121.)   Additionally, the PCR court explained

15  that the IAC claim lacked merit in any event because Petitioner did not show that a properly

16  worded instruction would have created a reasonable likelihood of acquittal on the felony

17  murder charge.  (*Id.*)

18        Regarding Claim 20, the R&R determines that a rational juror could have found that

19  the murder occurred in the course of and in furtherance of the kidnapping, thereby

20  satisfying the correct Arizona standard.[9]  (Doc. 31 at 17-18.)  As to Claim 6, the R&R

21  concludes that Petitioner cannot establish prejudice from counsel's failure to object to the

22  felony murder jury instruction because a reasonable juror could find Petitioner guilty based

23  on the correct instruction.  (*Id.* at 18.)

24        In his Objection, as to Claim 20, Petitioner argues that a killing intended to avoid

25  prosecution, as was the case here, does not necessarily further the underlying felony, and

26

27  _____

28  [9] Because the Arizona Supreme Court declined to address this claim, the R&R did not
    apply AEDPA deference.  (Doc. 31 at 17 (citing *Stanley v. Cullen*, 633 F.3d 852, 860 (9th
    Cir. 2011) ("When it is clear . . . that the state court has not decided an issue, we review
    that question de novo.")).)

- 18 -

accepting such a theory would improperly turn any post-felony homicide into felony murder. (Doc. 34 at 44-46.)  Petitioner contends that the R&R erred in analyzing Claim 6 by applying a sufficiency-of-the-evidence standard to the claim rather than the correct prejudice standard under *Strickland*. (*Id.* at 23-24.)

The Court finds no basis to grant relief on either claim.  Claim 20 fails because sufficient evidence supports the felony murder conviction under the correct legal standard. Under Arizona law, a defendant may be convicted of first-degree murder under a felony murder theory if the defendant causes the death of any person "in the course of and in furtherance of" an underlying predicate offense such as kidnapping, or the "immediate flight from" such an offense.  A.R.S. 13-§ 1105(A)(2); *see also State v. Miles*, 918 P.2d 1028, 1033 (Ariz. 1996) ("A death is 'in furtherance' of the underlying felony if the death resulted from an action taken to facilitate the accomplishment of one or more of the predicate felonies.").  Viewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements" of felony murder.  *See Jackson*, 443 U.S. at 319. As the Arizona Supreme Court explained:

> Martinez and his companions took steps throughout the course of the crime to conceal Aguilar from public view: Martinez kept him hidden in the trunk of a car and helped ensure their broken down car was moved to a side street before transferring Aguilar into the Explorer, which prevented the victim from being seen at the gas station. When Aguilar was conducted to the Explorer, Martinez parked the Explorer behind the other car to obscure it from view, and Aguilar was covered with a blanket. Finally, Aguilar's body was burned, an attempt to cover up the kidnapping, the robbery, and the murder itself.

*Martinez*, 189 P.3d at 362.  Because Martinez continuously concealed and restrained Aguilar before driving him to the desert and shooting him, a rational juror could have "found that the murder was perpetrated in order to prevent [Aguilar] from reporting the . . . kidnapping."  *State v. Burns*, 344 P.3d 303, 323 (Ariz. 2015).  Furthermore, the evidence reasonably supports a finding that Martinez killed Aguilar to facilitate the flight from the kidnapping.  Because a rational factfinder could determine that Martinez's murder of Aguilar met the correct standard for felony murder, Claim 20 fails on the merits.

As to Claim 6, Petitioner's argument that the R&R erred by applying a sufficiency-of-the-evidence standard rather than the correct *Strickland* prejudice standard is unfounded. The R&R expressly applied *Strickland*, explaining that Petitioner could succeed only if he showed "a reasonable probability that the jury would not have found him guilty of felony murder if it had been given the correct instruction." (Doc. 31 at 18 (citing *Strickland*, 466 U.S. at 694).) Given the abundant evidence supporting a felony murder conviction under the correct legal standard, Petitioner cannot establish a reasonable probability that he would have been acquitted of felony murder had trial counsel objected to the erroneous jury instruction. The PCR court's denial of Claim 6 was not objectively unreasonable. The Court accepts the R&R's findings and recommendation as to Claims 6 and 20.

**I.    Claim 7: Prosecutorial Misconduct—"Cisco BBQ" Alibi Remark**

In Claim 7, Petitioner alleges that the prosecutor engaged in prosecutorial misconduct by misrepresenting his alibi during closing arguments of the aggravation phase, and that counsel was ineffective for failing to object to those arguments. (Doc. 18 at 87-118.) The victim, Aguilar, was known as "Cisco." *See Martinez*, 189 P.3d at 354 n.5. The jury heard that, "[w]hen the police stopped the Explorer, Martinez and his companions told investigators that they had been at a barbeque at 'Cisco's,'" and "that this cover story came from Martinez." *Id.* at 354. During the aggravation phase closing arguments, the prosecutor stated that Petitioner provided his friends "a sickening" alibi "to offer up to the police officers—we were at Cisco's barbecue[.]" (Doc. 26-7 at 293.) Petitioner argues that the prosecutor misrepresented his alibi, which was that he was in the neighborhood to attend a barbecue at the house of a friend who coincidentally was also known as Cisco. (Doc. 18 at 88-89.) He argues that the prosecutor misstated his alibi, turning it into a mocking and inflammatory comment about being "at Cisco's BBQ." (*Id.* at 88, 108-109.)

The Arizona Supreme Court rejected Petitioner's prosecutorial misconduct claim, finding that the prosecutor's argument was "neither false nor a mischaracterization," but, rather, was supported by the record. *Martinez*, 189 P.3d at 354. The PCR court rejected Petitioner's related IAC claim, finding that counsel did not render deficient performance

in failing to object to the prosecutor's argument, given the Arizona Supreme Court's finding that the argument was neither false nor a mischaracterization of the evidence. (Doc. 26-4 at 123.) The PCR court further found that Petitioner failed to establish prejudice because no "correction or objection would have resulted in a different outcome as to whether or not the jury would find this aggravating factor proven." (*Id.*)

The R&R finds that Petitioner is not entitled to relief on Claim 7 because the state-court denials of the prosecutorial misconduct and IAC portions of the claim were not unreasonable. (Doc. 31 at 38-40.) The R&R finds that the prosecutor's argument was not improper and that there was overwhelming evidence supporting the F(6) aggravating factor even in the absence of the prosecutor's argument. (*Id.*) In his Objection, Petitioner contends that the R&R improperly relies on the facts stated in the Arizona Supreme Court's 2008 opinion rather than those developed during the PCR evidentiary hearing. (Doc. 34 at 25.) Petitioner further argues that the R&R erroneously applies a sufficiency-of-the-evidence standard in analyzing the IAC portion of Claim 7, rather than the correct *Strickland* standard. (*Id.*) He contends that "[c]onfidence in the outcome of the 2005 sentencing" on the kidnapping conviction, rather than "the sufficiency of the evidence on F(6), is the proper standard" for evaluating prejudice under *Strickland*. (*Id.* at 26.)

Even considering the evidence developed during the PCR evidentiary hearing indicating that Petitioner was referring to a friend named Cisco, rather than the victim, when he claimed to have gone to Cisco's for a barbeque, the Arizona Supreme Court's rejection of Petitioner's prosecutorial misconduct claim was not unreasonable under AEDPA standards. Given that the victim was referred to as Cisco, and that Petitioner had burned the victim's body, the prosecutor reasonably inferred that Petitioner's barbeque alibi referred to the victim. *See United States v. McChristian*, 47 F.3d 1499, 1507 (9th Cir. 1995) ("[P]rosecutors are allowed reasonably wide latitude and are free to argue reasonable inferences from the evidence[.]"). As the R&R recognizes, "[t]he fact that Petitioner knew a different Cisco that lived nearby does not preclude the inference." (Doc. 31 at 39.)

With respect to the IAC portion of Claim 7, the R&R correctly applies the *Strickland*

prejudice standard rather than a sufficiency-of-the-evidence standard.  The R&R finds, first, that there "is not a reasonable probability that the trial judge would have sustained an objection to the prosecutor's argument," and that even if trial counsel had successfully objected, there is not a reasonable probability that the jury would not have found the F(6) aggravating factor in the absence of the prosecutor's argument, given the "overwhelming evidence" supporting the aggravator.  (Doc. 31 at 40.)

Because the prosecutor's argument about Petitioner's barbeque alibi constituted a reasonable inference from the evidence, Petitioner cannot establish that trial counsel rendered deficient performance in failing to object to the argument, and he also cannot show a reasonable probability that the prosecutor's argument would have been precluded had counsel objected.  To the extent Petitioner argues that the result of his kidnapping sentencing hearing would have been different if counsel had rebutted the prosecutor's argument with evidence showing that Petitioner was referring to a different person named Cisco, the R&R correctly finds that there is no reasonable probability the F(6) aggravating factor would not have been found given the overwhelming evidence supporting that factor. Furthermore, given other evidence of aggravating factors, Petitioner has not established a reasonable probability that he would have received a more lenient kidnapping sentence but for counsel's alleged deficiencies.

The Court adopts the R&R's findings and denies habeas relief on Claim 7.

**J.  Claim 9: Double Jeopardy—Consecutive Sentences**

In Claim 9, Petitioner contends that his consecutive sentences for felony murder and the predicate offense of kidnapping violate the Double Jeopardy Clause because kidnapping is a lesser-included offense of felony murder.  (Doc. 18 at 128–132.)  The Arizona Supreme Court rejected this claim on direct appeal based on *State v. Girdler*, 675 P.2d 1301 (Ariz. 1983), which held that consecutive sentences for felony murder and the underlying felony do not violate double jeopardy.  *Martinez*, 189 P.3d at 366.  The R&R similarly finds that this claim fails because, under United States Supreme Court precedent, the Double Jeopardy Clause is not violated where the legislature, as in Arizona, has

intended to allow cumulative punishments in a single proceeding.  (Doc. 31 at 19-20 (citing *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *State v. Carlson*, 351 P.3d 1079, 1098-99 (Ariz. 2015)).)

In his Objection, Petitioner argues that relying on legislative intent improperly limits constitutional protections.  (Doc. 34 at 30.)  He also cites *Blockburger v. United States*, 284 U.S. 299 (1932), to suggest that double jeopardy should apply automatically whenever one offense is a lesser-included offense of another.  (*Id.* at 31.)  But *Blockburger* is not the applicable standard in this context.  The United States Supreme Court has explained that the *Blockburger* test is merely a "rule of statutory construction" designed to discern legislative intent and "should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz v. United States*, 450 U.S. 333, 340 (1981).  As the Supreme Court has clarified, when cumulative punishments are imposed in a single trial, the critical question is whether the legislature intended to authorize them. *Hunter*, 459 U.S. at 366 ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.")  Because Arizona courts have clearly indicated such intent, Petitioner's claim fails.  *See Carlson*, 351 P.3d at 1099 (consecutive sentences for kidnapping and felony murder do not violate double jeopardy); *Girdler*, 675 P.2d at 1308.  The Court adopts the R&R's findings and recommendation on Claim 9.

### K. Claim 10: Cumulative Analysis of Counsel's Errors

Petitioner asserts that the PCR court erred in rejecting his argument that trial counsel's errors must be evaluated cumulatively to determine prejudice under *Strickland*. (Doc. 18 at 132-139.)  The PCR court concluded that it could not grant relief on this claim because "the cumulative error doctrine is not recognized in Arizona law outside of the context of prosecutorial misconduct."  (Doc. 26-4 at 123 (citing *State v. Hughes*, 969 P.2d 1184, 1190 (1998) ("[T]his court does not recognize the so-called cumulative error doctrine.")).)  The R&R concludes that this claim fails because there is no clearly

established United States Supreme Court precedent requiring a cumulative prejudice analysis for IAC claims.  (Doc. 31 at 20-21.)  In his Objection, Petitioner argues that the R&R fails to discuss any of the four United States Supreme Court cases he cited in support of this claim.  (Doc. 34 at 31-34.)

Assuming Petitioner is correct that the PCR court erred in failing to conduct a cumulative error analysis, the Court finds that Petitioner still is not entitled to habeas relief, because even when trial counsel's errors are evaluated cumulatively, Petitioner has not established prejudice under *Strickland*.  Given the substantial evidence supporting Petitioner's convictions and sentences, he has not established a reasonable probability of a different result but for counsel's cumulative errors.  The Court will deny habeas relief on Claim 10.

### L.  Claim 11: PCR Court's Application of *Strickland* Standard

In Claim 11, Petitioner argues that the PCR court applied incorrect legal standards in assessing prejudice under *Strickland* when evaluating his IAC claims.  (Doc. 18 at 139–144.)  He asserts that, instead of assessing whether there was a reasonable probability of a different result but for counsel's errors, the PCR court instead applied a more exacting standard, relying on language such as "demonstrable reality and not merely a matter of speculation," and "Martinez can only speculate that the outcome would have been different."  (*Id.* at 139, 143.)

The R&R concludes that Claim 11 does not state an independent ground for habeas relief because it "is not connected to any specific errors by counsel or prejudice suffered by Petitioner."  (Doc. 31 at 21-22.)  Petitioner's Objection does not address this deficiency.  (*See* Doc. 34 at 34–37.)  Instead, Petitioner merely repeats the assertion that the PCR court's supposed misstatements preclude AEDPA deference.  (*Id.* at 34.)[10]  Because Petitioner has not specifically objected to the R&R's finding that Claim 11 does not state an independent claim for relief, and the finding is not clearly erroneous, the Court will

---

[10] The Court addresses in Section III(A), *supra*, Petitioner's argument that the R&R erred in applying AEDPA deference.

1    adopt the R&R's finding and deny relief on Claim 11.

2    **M. Claim 12: IAC—No Objection to Hung Jury Instruction in Aggravation**

3    **Phase**

4    Petitioner argues that trial counsel rendered ineffective assistance by failing to

5    object to a jury instruction stating that a hung jury at the aggravation phase would result in

6    a life sentence. (Doc. 18 at 144-147.) The State conceded that the jury instruction was

7    incorrect. *Martinez*, 189 P.3d at 357. An accurate jury instruction would have informed

8    the jury that, if they hung, Petitioner would have been subject to a new aggravation trial.

9    *See* A.R.S. § 13-752(J) (if "the jury is unable to reach a verdict on any of the alleged

10   aggravating circumstances and the jury has not found that at least one of the alleged

11   aggravating circumstances has been proven, the court shall dismiss the jury and shall

12   impanel a new jury"). Petitioner contends the instruction was misleading and exerted

13   improper pressure on jurors to reach unanimity on aggravating factors. (Doc. 18 at 146-

14   147.) The PCR court denied this claim, finding that the instruction, if anything, benefited

15   Petitioner by suggesting a single holdout juror could prevent a death sentence. (Doc. 26-4

16   at 122.) The R&R agrees, concluding that Petitioner cannot show prejudice under

17   *Strickland* because there is no evidence that the instruction misled the jury or impacted the

18   outcome. (Doc. 31 at 41.) In his Objection, Petitioner argues the instruction created a

19   coercive atmosphere, but he again offers no evidence that any juror surrendered their

20   independent judgment or that deliberations were affected. (Doc. 34 at 37.) Petitioner's

21   speculation about coercion does not establish a reasonable probability of a different result

22   had counsel objected to the instruction, nor does it render the PCR court's conclusion

23   objectively unreasonable. Furthermore, even if Claim 12 has not been entirely mooted by

24   the vacatur of Petitioner's death sentence, any effect that the erroneous instruction may

25   have had on Petitioner's kidnapping sentence is significantly attenuated. The Court adopts

26   the R&R's findings and recommendation as to Claim 12.

27   **N. Claim 13: Trial Counsel's Subpoena Evasion**

28   Petitioner contends that trial counsel rendered ineffective assistance by failing to

appear at a Rule 24 hearing for a new trial.  (Doc. 18 at 148-152.)  The PCR court rejected this claim because counsel no longer represented Petitioner at that stage and thus could not have been ineffective.  (Doc 26-4 at 124.)  The R&R agrees, finding that the PCR court did not unreasonably apply *Strickland*, particularly given that Petitioner acknowledges trial counsel's absence "may not have resulted in any lasting prejudice."  (Doc. 31 at 22 (citing Doc. 18 at 152).)  In his Objection, Petitioner does not dispute the PCR court's finding or provide a meaningful argument regarding prejudice.  (Doc. 34 at 38.)  Because the PCR court's rejection of this claim was not objectively unreasonable, the Court adopts the Magistrate Judge's findings and recommendation on Claim 13.

### O. Claims 14, 22, and 23

As does the R&R, the Court discusses Claims 14, 22, and 23 together, as each address the F(6) aggravating factor.

#### 1. Claim 22: Sufficiency of the Evidence—F(6) Cruelty Aggravator

In Claim 22, Petitioner argues that the jury's finding of the F(6) cruelty aggravator was not supported by sufficient evidence because his co-defendant, Summey-Montaño, committed all the cruel acts.  (Doc. 18 at 185–186.)  The Arizona Supreme Court rejected this argument, finding that the record was "replete with evidence of Martinez's cruelty," that "the superior court expressly instructed the jury not to impute Summey–Montaño's conduct to Martinez," and that "[s]ubstantial evidence supports the jury's conclusion that the killing was 'especially cruel.'"  *Martinez*, 189 P.3d at 363.

Applying a doubly deferential standard under AEDPA, the R&R finds that the Arizona Supreme Court's decision was not an unreasonable application of clearly established federal law and that sufficient evidence supported the cruelty aggravator.  (Doc. 31 at 41-43.)  Specifically, the R&R concludes that "[t]aking the evidence in the light most favorable to upholding this factor, the Court finds more than enough evidence for a rational juror to conclude that the murder was especially cruel because Petitioner should have known the victim would suffer mental anguish."  (*Id.* at 42.)  In his Objection, Petitioner contends that this claim is not subject to the double-deference standard because it is not an

IAC claim.  (Doc. 34 at 50.)  He also reiterates his argument that cruelty was attributable only to Summey-Montaño.  (*Id.*)

Petitioner's objection is unavailing.  As explained above with respect to Claim 21, the R&R correctly applies the doubly deferential standard applicable to review under AEDPA of habeas claims asserting insufficiency of the evidence.  *See Parker*, 567 U.S. at 43.  Applying this "twice deferential standard," *id.*, the R&R correctly concluded that the Arizona Supreme Court's rejection of Claim 22 was neither contrary to nor an unreasonable application of clearly established federal law.  Petitioner's attempt to shift blame to Summey-Montaño fails in light of the substantial evidence of his own cruelty.  "Cruelty involves the pain and distress visited upon the victims and may be found when the victim consciously experienced physical or mental pain prior to death, and the defendant knew or should have known that suffering would occur."  *Martinez*, 189 P.3d at 363.  Here, Petitioner beat Aguilar as the victim cried and pleaded for an explanation; he tied Aguilar's hands behind his back and hit him in the head with a shotgun; he confined Aguilar in a hot car trunk and taunted him en route to the desert; he kicked and dragged Aguilar in the desert; he forced Aguilar to march and lie down; he joked about missing the first gunshot that he fired at Aguilar; and he ignored Aguilar's pleas for his life.  (Doc. 26-6 at 149, 154-161, 165, 178-179, 182-183, 186-187, 189-190, 212-214, Doc. 26-7 at 35-38, 42, 44-49.) This conduct supports the jury's cruelty finding based on both physical pain and mental anguish.  Because sufficient evidence supports the cruelty finding, Claim 22 fails.  The Court therefore adopts the Magistrate Judge's findings and recommendation as to Claim 22.

## 2.    Claim 23: F(6) Heinous and Depraved Aggravator

In Claim 23, Petitioner argues that the F(6) heinous and depraved aggravator was inapplicable because there was no evidence of relishing, gratuitous violence, or mutilation. (Doc. 18 at 186-187.)  Petitioner asserts the victim's "body was burned to eliminate fingerprints rather than for the purpose of mutilation."  (*Id.* at 187.)  The Arizona Supreme Court did not expressly address this aspect of the F(6) factor, and instead upheld the

aggravator solely on the basis of cruelty. *See Martinez*, 189 P.3d at 363.[11]  The R&R finds that the jury's verdict on the F(6) factor could stand solely based on cruelty, "of which there was a tremendous amount of evidence," and that there was also sufficient evidence that the murder was especially heinous or depraved, including Petitioner's burning of the victim's body, Petitioner's participation in the victim's prolonged abuse, and Petitioner laughing and bragging about the murder.  (Doc. 31 at 43–44.)  Petitioner does not object to the R&R's rejection of Claim 23 or attempt to demonstrate that the state court's decision was contrary to or an unreasonable application of clearly established federal law.  (*See* Doc. 34 at 51.)  The Court adopts the R&R's recommendation and denies habeas relief on Claim 23.

### 3.    Claim 14: IAC—Trial Counsel's Unfamiliarity with F(6) Heinous, Cruel, or Depraved Aggravator

In Claim 14, Petitioner contends that trial counsel rendered ineffective assistance by failing to understand that the F(6) heinous, cruel, or depraved aggravating factor is disjunctive and consists of three separate prongs.  (Doc. 18 at 152–155.)  However, Petitioner acknowledges that the jury was properly instructed.  (*Id.* at 154 (in which Petitioner explains "[t]he only reason that the jury got the correct jury instruction was because the court and the State understood F(6) cruelty").)  The PCR court rejected this claim, finding that Petitioner had not shown prejudice.  (Doc. 26-4 at 122.)  The Court elaborated:

> This offense perpetrated against the victim contained multiple levels of cruel behavior, heinous activity, and depravity and, as such, the jury was given multiple avenues to find this aggravating factor proven beyond a reasonable doubt. The evidence the jury heard as to the cruelness factor was that the victim was bound in a vehicle for hours during a Pima County summer, tortured along the way after his house was robbed, attacked verbally, kicked, beaten, stabbed, dragged, and shot at multiple times. As to the depravity and heinousness factor, the jury heard the victim's body was set ablaze and abandoned after he was murdered. Put another way, the evidence regarding the F(6) factor was so complete to support this aggravating factor that no

---

[11] "The 'heinous, cruel, or depraved' aggravator is written in the disjunctive and the state need prove only one of the three conditions to trigger application of the aggravating circumstance.  Accordingly, a finding of cruelty alone is sufficient to establish the F.6 aggravator."  *Martinez*, 189 P.3d at 362 (internal quotations and alterations omitted).

different outcome could reasonably have been expected, even with the most educated and savvy defense attorney on sentencing law handling the aggravation phase.

(*Id.* at 122-123.)  The R&R finds that the PCR court's ruling was not an unreasonable application of *Strickland*.  (Doc. 31 at 44-45.)

In his Objection, Petitioner reiterates that counsel's failure to recognize the disjunctive nature of the F(6) aggravating factor constitutes evidence of incompetence, but Petitioner does not identify any specific prejudice stemming from this claim, nor does he address the reasoning of the PCR court or the R&R.  (Doc. 34 at 39.)  Because Petitioner has failed to demonstrate prejudice or show that the PCR court's ruling was unreasonable, the Court adopts the Magistrate Judge's recommendation and denies relief on Claim 14.

## P.  Claim 15: *Blakely* Challenge

In Claim 15, Petitioner argues that his aggravated kidnapping sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004), because the sentencing court relied on aggravating factors that were not found by a jury beyond a reasonable doubt.  (Doc. 18 at 155–156.)  The Arizona Supreme Court found no fundamental error as to the aggravated kidnapping sentence because a reasonable juror would have found the aggravators upon which the kidnapping sentence was based.  *Martinez*, 189 P.3d at 364 ("no reasonable jury could fail to find the aggravators the court identified").  The court noted that the presence of accomplices, a statutory aggravating factor, was uncontested.  *Id.*

The R&R concludes that although the trial court imposed an aggravated sentence without submitting aggravating factors to the jury in violation of *Blakely*, the error was harmless because there is no grave doubt that a jury would have found at least one statutory aggravating factor—specifically, the presence of accomplices—beyond a reasonable doubt.  (Doc. 31 at 22-25.)  Accordingly, the R&R finds that the Arizona Supreme Court's rejection of this claim was not objectively unreasonable.  (*Id.* at 25.)

In his Objection, Petitioner asserts that the "growing cumulation of error, some harmless, some not harmless" rebuts the *Strickland* presumption of competence of defense counsel."  (Doc. 34 at 39.)  However, Petitioner does not attempt to contend with the R&R's

findings. The Court adopt the R&R's findings and recommendation as to Claim 15.

### Q. Claim 16: Prosecutorial Misconduct—Intentionally Missed Shot

In Claim 16, Petitioner alleges prosecutorial misconduct arising from the State's penalty-phase argument that Petitioner intentionally missed the victim with the first gunshot so as to prolong the victim's suffering. (Doc. 18 at 156-159.) Petitioner asserts that the prosecutor made this argument despite knowing, based on a pretrial free talk with a cooperating witness, that the missed shot was not intentional. (*Id.* at 156, 158.)

During the aggravation phase closing argument, the prosecutor asserted that the murder qualified as especially cruel in part due to the following:

> In an act that can only be described as debased, perverse, shockingly evil, what does this man do? What does he do? He intentionally fires that gun and misses. He misses, folks. One of the very last things Francisco Aguilar hears is him chuckling; is him chuckling. And saying, "Oops. Missed." Missed.

(Doc. 26-7 at 302.) The Arizona Supreme Court rejected this claim after finding that the prosecutor's argument was grounded in trial evidence. *Martinez*, 189 P.3d at 354. It pointed to testimony from Bedoy and Lopez indicating that Petitioner laughed after missing his first close-range shot at the victim. *Id.* at 354 n.6. The R&R likewise finds that the challenged argument did not constitute misconduct or a due process violation because it was based on reasonable inferences from the trial evidence—specifically, testimony that Petitioner laughed after the first missed shot and then proceeded to shoot the victim again. (Doc. 31 at 45-46.)[12]

In his Objection, Petitioner argues that the R&R fails to assess the claim under the cumulative error framework articulated in *Berger v. United States*, 295 U.S. 78, 89 (1935). (Doc. 34 at 40.) But this argument is unavailing, because Petitioner identifies no underlying prosecutorial misconduct, and therefore there is no basis for cumulative error review. *See Williams v. Filson*, 908 F.3d 546, 570 (9th Cir. 2018) ("Of course, we cannot

---

[12] The R&R finds that, to the extent Claim 16 also asserts that trial counsel was ineffective, the IAC portion of the claim is procedurally defaulted. (Doc. 31 at 45 n. 11.) As discussed above, Petitioner did not object to the R&R's procedural default finding, and the Court adopts it.

consider the cumulative effect of *non*-errors.") (emphasis in original).  The prosecutor's remark that Petitioner intentionally missed the first shot to instill fear was a reasonable inference from the evidence.  During closing arguments, "prosecutors are allowed reasonably wide latitude and are free to argue reasonable inferences from the evidence." *McChristian*, 47 F.3d at 1507.  Here, Bedoy specifically testified that Petitioner laughed and said "I missed" after firing, and that it appeared he missed on purpose to frighten the victim.  (Doc. 26-7 at 48-49.)

Petitioner has not shown that the Arizona Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law, or that it rested on an unreasonable determination of the facts. The Court adopts the R&R's analysis and denies relief on Claim 16.

### R.  Claim 17: Due Process—Refusal to Compel Co-Defendant Trial Testimony

In Claim 17, Petitioner asserts that the trial court violated his due process rights by refusing to compel the testimony of his sentenced co-defendant, Summey-Montaño, concerning the victim's alleged molestation of Summey-Montaño's 11-year-old cousin. (Doc. 18 at 159-165.)  The Arizona Supreme Court set forth the following background with respect to this claim:

> The State granted Lopez and Bedoy testimonial immunity as part of plea agreements under which each was permitted to plead to kidnapping, with a maximum sentence of twelve years. Each testified against Martinez at trial. Summey-Montaño pleaded guilty to first degree murder and was sentenced to life imprisonment; his postconviction relief proceedings, see Ariz. R. Crim. P. 32, were pending at the time of Martinez's trial. Martinez sought to compel Summey-Montaño to testify. Summey-Montaño invoked his Fifth Amendment right against self-incrimination. The trial judge held that Summey-Montaño retained that right during the pendency of his initial postconviction proceedings. See State v. Rosas-Hernandez, 202 Ariz. 212, 217, ¶ 14, 42 P.3d 1177, 1182 (App. 2002) ("[I]f a witness' Fifth Amendment privilege survives during a direct appeal, it also survives pending post-conviction relief.")

*Martinez*, 189 P.3d at 355.  The Ariona Supreme Court denied this claim, concluding that Petitioner failed to show any due process violation or that the testimony would have affected the outcome of the proceedings. The court noted that Petitioner was permitted to present the alleged molestation theory through other witnesses, and the trial court's refusal

1   to compel Summey-Montaño's testimony due to his invocation of the Fifth Amendment

2   and the absence of an enforceable immunity agreement did not amount to constitutional

3   error. *Id.* at 355-56.

4   　　　The R&R recommends denying relief because that Petitioner does not identify any

5   clearly established Supreme Court precedent requiring the trial court to compel a non-

6   immunized, convicted co-defendant to testify under the circumstances presented. (Doc. 31

7   at 25-28.) Petitioner objects, arguing that the refusal to compel Summey-Montaño's

8   testimony deprived him of critical mitigating evidence. (Doc. 34 at 41-42.) Petitioner also

9   objects to the R&R's finding that *Chavez v. Martinez*, 538 U.S. 760 (2003), does not

10  represent controlling Supreme Court authority pursuant to § 2254(d) to support relief on

11  the claim. (*Id.*)

12  　　　Petitioner's reliance on *Chavez v. Martinez*, 538 U.S. 760 (2003), is misplaced. In

13  *Chavez*, the Court held that the Self-Incrimination Clause is not violated unless coerced

14  statements are used in a criminal case against the speaker. But crucially, *Chavez* also

15  recognizes that individuals retain a Fifth Amendment privilege to refuse to give potentially

16  incriminating testimony in any proceeding, even before a violation occurs, unless they are

17  granted immunity. *See id.* at 770–71 (plurality) (recognizing the evidentiary privilege to

18  remain silent). Here, unlike in *Chavez*, Summey-Montaño had been criminally charged,

19  and his case remained pending when Petitioner sought to compel his testimony. Thus,

20  compelling him to testify would have implicated his Fifth Amendment privilege, regardless

21  of whether his statements were ultimately used against him. Accordingly, the R&R

22  correctly concludes that *Chavez* does not stand for the proposition that Summey-Montaño

23  lacked a Fifth Amendment right to decline to testify, and Petitioner has failed to identify

24  clearly established Supreme Court precedent that would entitle him to relief under AEDPA.

25  **S.  Claim 18: Prosecutorial Misconduct—Motive Fabrication**

26  　　　In Claim 18, Petitioner alleges that the State knowingly presented a false narrative

27  by arguing at trial that Petitioner fabricated the claim that the victim had molested

28  Summey-Montaño's eleven-year-old cousin. (Doc. 18 at 166-174.) The statement at issue

is as follows:

> But then six weeks before trial when the defendant says these things – then he says this happened. This happened because the defendant was told somehow by Jonathan Summey-Montaño that the victim had done something to a cousin, to a minor child or to the 12-year-old cousin. You have to ask yourself, I mean that does not match really with any of the evidence in the case. Michael Lopez and Fernando Bedoy.

(Doc. 26-8 at 54-55.) The Arizona Supreme Court rejected this claim, finding that the State did not misrepresent the evidence or act improperly during closing argument because:

> [T]he prosecutor's comments as to Martinez's motive properly questioned the link between the alleged motive and Martinez's own claim of having been victimized as a child. The prosecution pointed to the absence in the same documents of any complaint by Martinez that when he was a child he had been the victim of molestation.

*Martinez*, 189 P.3d at 354 n.6.

In reviewing the statement, the R&R determines that the prosecutor was not suggesting that Petitioner had only recently accused the victim of child molestation, but rather that Petitioner had waited until six weeks before trial to claim that he himself had been molested as a child. (Doc. 31 at 46-48.)[13]

In his Objection, Petitioner repeats his argument that the prosecutor knew the truth and argued a contrary set of facts. (Doc. 34 at 42-43.) However, Petitioner's argument disregards the prosecutor's statements immediately prior to the one at issue, which provide necessary context:

> And you've got to ask yourselves on this molest thing, take the time again, look at . . . the probation reports, all the reports in the defense exhibit. *Nowhere does Cody Martinez ever report that he has been molested or abused until six weeks before this trial starts. Six weeks before this trial starts in his eight meeting with Dr. Perrin, this is the first time it comes up*. . . . And the reason it's kind of significant is if you go back and you look at . . . the probation reports, he's been asked . . . And in all of the juvenile probation reports he reports no abuse.

(Doc. 26-8 at 51 (emphasis added).)

---

[13] Additionally, the R&R finds that, to the extent Petitioner alleges in Claim 18 that trial counsel rendered ineffective assistance in failing to object to the prosecutor's argument, the IAC portion of Claim 18 is procedurally defaulted. (Doc. 31 at 47 n. 12.) As discussed above, Petitioner did not object to the R&R's procedural default finding, and the Court adopts it.

- 33 -

As the R&R notes, the specific argument cited by Petitioner is ambiguous, but in the preceding statement, the prosecutor clearly argues that Petitioner alleged for the first time, six weeks before trial, that he had been molested as a child.  (Doc. 31 at 48.)  The Arizona Supreme Court did not unreasonably apply clearly established federal law when it determined that, when read in context, the prosecutor's arguments were not improper.  The Court adopts the R&R's recommendation and denies relief on Claim 18.

**T.  Claim 19: *Caldwell* Violation**

In Claim 19, Petitioner asserts that the trial court violated *Caldwell v. Mississippi*, 472 U.S. 320 (1985), by instructing the jury during voir dire that if they convicted Petitioner, he would have a right to appeal.  (Doc. 18 at 175-180.)  He further claims that trial counsel was ineffective for failing to object to the instruction.  (*Id.*)

The R&R concludes that the whole of Claim 19 is technically exhausted and procedurally defaulted because Petitioner failed to fairly present a *Caldwell* claim or a related IAC claim in state court, and any attempt to do so now would be barred under Arizona's rules of preclusion.  (Doc. 31 at 29.)  It further holds that *Caldwell* does not apply to non-capital convictions, and even if it does, the trial court's statement was not improper, counsel's failure to object was not deficient, and Petitioner cannot show prejudice given the overwhelming evidence of guilt.  (*Id.* at 29-30.)

Petitioner objects to the R&R's findings that this Claim is procedurally defaulted, and he argues that the Arizona Supreme Court extended the application of *Caldwell* to non-capital sentences in *Ring v. Arizona*, 536 U.S. 584 (2002).  (Doc. 34 at 44-45.)  However, as Respondents note (Doc. 40 at 26), Petitioner does not dispute that: (1) he never argued below that this claim related to his kidnapping sentence; (2) the Arizona Supreme Court and the PCR court treated the claim as limited to Petitioner's death sentence; (3) Petitioner never challenged that reading; and (4) after Petitioner's death sentence was vacated, he raised no *Caldwell* claim.  Furthermore, even if this claim is not procedurally defaulted, it fails on the merits, because *Caldwell* does not apply to non-capital cases.  Rather, *Caldwell*'s holding hinged on the "heightened need for reliability in the determination that

death is the appropriate punishment in a specific case."  472 U.S. at 323 (internal quotation marks omitted).  Contrary to Petitioner's arguments, *Ring* does not discuss or extend *Caldwell*.  The Court adopts the Magistrate Judge's findings and recommendation as to Claim 19.

### U.  Claim 24: Juror Communications

Petitioner asserts that the trial court engaged in impermissible ex parte communications during penalty phase jury deliberations when it improperly answered three jury questions without notice to him or counsel.  (Doc. 18 at 187-191.)  Petitioner explicitly acknowledges in his Amended Petition that, except for a pecuniary gain question asked during the aggravation phase, "these were penalty phase questions and are mostly mooted by the resentencing already had." (*Id.* at 191.)

The jury asked one question during the aggravation phase: "[i]s murder as an attempt to cover up a robbery considered a murder for pecuniary gain?"  *Martinez*, 189 P.3d at 357 n.9.  The trial court answered, "[y]ou must rely on the Court's instructions and make your determination.  No further explanation is appropriate at this time." *Id.*  Relying on his own memory and the bailiff's affidavit, the trial judge found that the defense was contacted and did not object to the proposed answers; the trial court therefore rejected Petitioner's account.  *Id.* at 357.  The Arizona Supreme Court found this conclusion was supported by the record and deferred to it.  *Id.*

The R&R presumes correct the Arizona Supreme Court's factual finding that the trial court contacted defense counsel about the jury's question regarding pecuniary gain because Petitioner did not rebut that finding with clear and convincing evidence.  (Doc. 31 at 49.)  Based on that factual finding, the R&R concludes that the trial court did not err in its handling of the jury question.  (*Id.*)[14]  The R&R further finds that Petitioner is precluded from relief under AEDPA because he has not identified any clearly established Supreme Court law on point.  (*Id.* at 50.)  Petitioner raises no specific objections to the R&R's

---

[14] The R&R further finds that, to the extent Petitioner asserts in Claim 24 that trial counsel was ineffective, the IAC portion of the claim is procedurally defaulted.  (*Id.* at 49 n.13.) Petitioner did not object to the R&R's procedural default finding, and the Court adopts it.

findings.  (*See* Doc. 34 at 51.)  The Court adopts the R&R's findings and recommendation as to Claim 24.

**IV.   Conclusion**

The Court accepts and adopts the R&R's findings that (1) Petitioner's Amended Petition should not be dismissed as premature; (2) the IAC portions of Claims 16, 18, and 24 are procedurally defaulted; and (3) the remaining claims fail on the merits.

**IT IS ORDERED** that Petitioner's Objection (Doc. 34) is **overruled**, and Magistrate Judge Kimmins's Report and Recommendation (Doc. 31) is **accepted and adopted**, as set forth above.

**IT IS FURTHER ORDERED** that Petitioner's Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 18) is **denied**.  The Clerk of Court is directed to enter judgment in favor of Respondents and close this case.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 2253(c)(3) and Rule 11 of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability, because Petitioner has not made a substantial showing of the denial of a constitutional right.

Dated this 23rd day of September, 2025.

_____
Honorable Rosemary Márquez
United States District Judge